STUCKI–MILLER, INC., Plaintiff
and Appellant,

v.

SANTA FE ENGINEERS, INC.,
Defendant and Respondent.

No. 15601.

Supreme Court of Utah.

March 16, 1979.

---

1. *Boskovich v. Utah Const. Co.*, 123 Utah 387, 259 P.2d 885.

2. *Willard M. Milne Inv. Co. v. Cox*, Utah, 580 P.2d 607.

Earl S. Spafford of Spafford & Nixon, Salt Lake City, for plaintiff and appellant.

Roy G. Haslam, Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Plaintiff, a roofing subcontractor, initiated this action to recover from defendant, general contractor, payment for work and materials claimed by plaintiff to constitute extra work not included under the subcontract. The disputed work involved the construction of roof drainage crickets. Defendant successfully urged before the trial court the installation of crickets was specified in the plans, and the subcontract required plaintiff to construct them. Plaintiff appeals from the adverse ruling. The judgment of the trial court is affirmed. No costs awarded.

The United States Army accepted defendant's bid to construct a reserve facility in Ogden, Utah; the contract price was $1,501,141. Plaintiff's bid for the roofing was incorporated in defendant's bid for the project. Subsequently, plaintiff and defendant entered into a subcontract agreement, whereby plaintiff agreed to perform fully and completely in accordance with the

terms of the general contract, the following:

> All bituminous dampproofing, thermal insulation for built-up roofing, and built up roofing in accordance with General Provisions and Special Provisions as applicable to roofing, Division 1—General Requirements as applicable to roofing, Section 7A—Bituminous Dampproofing, Section 7B—Thermal Insulation for Built-up Roofing, and Section 7C—Built-Up Roofing for Application Directly on Decks and on Insulation.

The subcontract further recited:

> This Subcontract specifically excludes (1) Preparation of surfaces to be waterproofed, roofed, or dampproofed, (2) Sheet metal work, (3) Caulking and sealing, (4) Wood nailers Paragraph 8 of Section 7B, (5) Wood vents for parapet walls, Paragraph 9 of Section 7B.

The subcontract incorporated as part of the agreement the original proposal and its terms and conditions submitted by plaintiff on Builders Bid Service Form. The subcontract incorporated by reference the plans and specifications of the general contract. The subcontract price was $66,181, which defendant paid to plaintiff. In this action, plaintiff sought to recover an additional $3,229.

The trial court found that plaintiff, prior to the execution of the contract, had an opportunity to examine fully the plans and specifications designating the materials to be used in constructing the roof and the manner and method by which the work was to be completed. After execution of the subcontract plaintiff complained to defendant that roof drainage was not a job requirement under the contract; and if such were to be furnished by plaintiff, extra compensation should be paid. After an exchange of correspondence defendant notified plaintiff to proceed with the installation of the roof according to the contract, including installation of drainage materials, or the contract would be deemed terminated. Plaintiff proceeded with the construction and completed the roof in accordance with the plans and specifications. Plaintiff constructed the drainage crickets from fiberboard roof insulation material, expending therefor the sum of $3,229.

The trial court found two of the drawings, A5 and A14, included in the plans incorporated into the contract, contained plain views of the roof structure. On those plain views, lines were drawn between the roof drains, indicating drainage requirements. On drawing A14, there was a notation pertaining to one of these lines: "Crickett (type)." The detailed drawings upon A5 and A14 indicated the type of materials to be used by plaintiff in constructing the roof. Drawings A5, A6, and A14 designate the cants and slopes to the roof drains were to be constructed from insulation material. No other material was designated in the plans and specifications. The trial court further found that the fiberboard material from which plaintiff constructed the drainage crickets might be used as insulation material in constructing the roof in accordance with the plans and specifications.

Based on the foregoing, the trial court concluded as a matter of law the installation of drainage materials to construct the roof in conformity with the plans and specifications was clearly a job requirement included in the subcontract. Thus, plaintiff was not entitled to extra compensation.

On appeal, plaintiff contends the evidence was insufficient to support the findings and conclusions of the trial court. In assessing plaintiff's contentions, this Court surveys the whole of the evidence, and any inferences drawn therefrom, in the light most favorable to sustaining the decision of the trial court.[1]

As a matter of clarification, it should be observed that a cricket is more of a concept or design that an object, for it is the design of the slope of a roof so water

---

1. *Oberhansly v. Earle*, Utah, 572 P.2d 1384 (1977); *Hanover Limited v. Fields*, Utah, 568 P.2d 751 (1977).

will drain in a particular direction. Plaintiff's claim, in essence, is there was not included in the plans, a specific drawing of a cross-section of a cricket, indicating precisely the material of which it was to be constructed. The plans do indicate that plaintiff was to install insulation on top of either a flat steel or concrete roof, and above the insulation plaintiff was to construct a built up roof. The plans further indicate the drainage crickets were to be constructed on the roof. Furthermore, the plans indicate another drainage structure, the cants, were to be constructed of the insulation material. Although plaintiff presented evidence indicating crickets may be built of wood, steel, or concrete as well as insulation material, the plans do not indicate these suggested materials. Only insulating materials are indicated in the plans above the steel or concrete roof, and below the built up roofing. A witness for the defense, who had had considerable experience reading plans, testified he would interpret the plans as requiring the roofer to build the crickets of insulation material. All of the foregoing evidence sustains the findings of the trial court.

■ Plaintiff further contends a provision (a condition) in its bid, which was incorporated into the subcontract specifically excluded plaintiff's responsibility for the drainage. Plaintiff cites this provision to support two points. First, this condition rendered it unnecessary to include under the express exclusions in the subcontract the drainage crickets. Second, plaintiff contends the findings of the trial court were inconsistent, since the trial court found both the original bid was part of the subcontract, and installation of drainage materials was the responsibility of plaintiff under the subcontract.

The condition in the bid stated:

24 *Roof Drain Locations.* Subcontractor shall not be responsible for roof drainage, and will install extra crickets, cants, etc. necessary to change drain elevations only on written change orders and at additional cost.

This condition cannot be construed as urged by plaintiff. The condition has reference to the *location* of the roof drains and relieves the roofer of responsibility if there be improper drainage by adhering to the plans and specifications. One may further properly infer it is the responsibility of the roofer to install the cants and crickets, and, if *extras* be required to change the drain elevations, a written change order is required.

■ Finally, plaintiff contends the trial court erred by refusing to permit plaintiff to introduce into evidence building plans, other than the ones involved in the contract, to show the custom in the building trade, of indicating crickets, and the method of construction. Plaintiff argues the trial court deprived plaintiff of the opportunity to show, by comparison with typical building plans, the plans involved here were, at least, deficient in detail. Thus, plaintiff could not have been expected to draw from the plans the responsibility for the omitted detail.

The trial court properly excluded this evidence which was not relevant to prove the material fact in issue. Under Rule 1(2), U.R.E., "relevant evidence" is defined as "evidence having any tendency in reason to prove or disprove the existence of any material fact." The material issue in this case was whether under the terms of the contract, construing all the documents which constituted the agreement between the parties, it was plaintiff's responsibility to install the materials which would provide drainage in accordance with the plans. Plaintiff's proffer of evidence was for the purpose of excusing its performance on the ground of unilateral mistake and not to resolve the specific duties undertaken by the terms of the agreement.

WILKINS, HALL, and STEWART, JJ., concur.

CROCKETT, C. J., concurring with comment by separate opinion.

CROCKETT, Chief Justice (concurring with comment):

I agree except as to the treatment of the ruling on evidence. I think the proffer of other building plans to show a custom in the building trade as to how the construction of "crickets" is sometimes indicated could well have been admitted in evidence. But I do not think the exclusion was of sufficient gravity that there is any reasonable likelihood that there would have been a different result.[1] Therefore it was not an error which would warrant reversal of the judgment.

---

1. See Rule 61, U.R.C.P.; and *Rowley v. Graven Brothers & Company*, 26 Utah 2d 448, 491 P.2d 1209.